## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | |
| | : | Civil Action No. 24-4088 |
| RICHARD S. BROWN, | : | |
| Debtor. | : | |
| | : | Bankruptcy No. 21-13400 |
| _____ | : | |
| JONATHAN SETHNA, *et al.,* | : | |
| Plaintiff/Appellee | : | Adversary No. 22-00034 |
| | : | |
| v. | : | |
| | : | |
| RICHARD S. BROWN | : | |
| | : | |
| Defendant/Appellant | : | |

## MEMORANDUM

**Perez, J.**                                                          **July 25, 2025**

This is an appeal from a final judgment of the United States Bankruptcy Court for the Eastern District of Pennsylvania. The Bankruptcy Court held that Richard Brown's debt to Jonathan and Christine Sethna is nondischargeable under 11 U.S.C. § 523(a)(2)(A) based on Brown's admissions of fraud in a written settlement agreement. For the reasons that follow, the Bankruptcy Court's judgment will be affirmed.

## I.    BACKGROUND AND PROCEDURAL HISTORY

This appeal arises from a long-running dispute between Jonathan and Christine Sethna ("the Sethnas") and debtor Richard Brown ("Brown"). In 2004, the Sethnas contracted to purchase and have a home built by Brown's company, Oxford Consulting, at 1305 South Street in Philadelphia.[1] After construction was completed, the Sethnas alleged the home was defective, and

---

[1] Amended Complaint at ¶ 4, Adv. Pro. No. 22-00034.

in 2007 they sued Brown and Oxford in state court, asserting claims for breach of contract and fraud.[2]

The parties settled in 2008. Under the Settlement Agreement, Brown agreed to pay the Sethnas $5,000 and stipulated to a $120,000 judgment in their favor.[3] Brown also admitted that he made "materially false representations to Mr. Sethna and Ms. Sethna in connection with the Agreement of Sale and the building of the Property . . . with the intent to deceive and fraudulently obtain money and property. . . .".[4] The Settlement Agreement explicitly stated that the debt was nondischargeable under § 523(a)(2)(A) and that if Brown later argued it was dischargeable in bankruptcy, the mutual release would become void and the original litigation could be reinstated.[5]

Brown also agreed to perform repairs, and failure to complete them would permit the Sethnas to revive the stipulated $120,000 judgment.[6] Brown never completed the repairs, and in 2009 the Sethnas revived the judgment in state court (the "Revived Judgment").[7] With interest accruing at the statutory rate, the judgment now totals $234,704.96.[8]

In 2021, Brown filed for Chapter 13 Bankruptcy. The Sethnas moved for summary judgment in January 2023, arguing the debt was nondischargeable under § 523(a)(2)(A), and alternatively under § 523(a)(6).[9] On March 3, 2023, the Bankruptcy Court granted partial summary judgment on the § 523(a)(2)(A) claim based on Brown's admissions of fraudulent representations in the Settlement Agreement.[10]

---

[2] *Id*. at ¶¶ 6-7.
[3] Settlement Agreement ¶¶ 1-2, ECF No. 5-4 at 66.
[4] *Id*. at ¶ 11.
[5] *Id*.
[6] *Id*. at ¶ 4
[7] Amended Complaint at ¶¶ 14-15
[8] ECF No. 1-1 at 11.
[9] *Id.*
[10] ECF No. 1-1 at 16.

Following further proceedings, the Bankruptcy Court entered a final order in July 2024, concluding that: (1) Brown's breach of contract claim was a counterclaim barred by the statute of limitations; and (2) the entire $234,704.96 debt, including post-judgment interest, was nondischargeable. Brown timely appealed that judgment to the district court.[11]

## II.    LEGAL STANDARD

This Court has appellate jurisdiction over final judgments and orders of bankruptcy courts under 28 U.S.C. § 158(a). On appeal, legal conclusions are reviewed de novo, factual findings are reviewed for clear error, and exercise of discretion is reviewed for abuse thereof. *In re Trans World Airlines, Inc.,* 145 F.3d 124, 131 (3d Cir. 1998). Summary judgment is properly granted if the movant shows that there is no genuine dispute of material fact and they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

## III.    ANALYSIS

The issues presented on appeal concern the Bankruptcy Court's treatment of the adversary proceeding between Brown and the Sethnas. Brown challenges the court's decision to grant summary judgment, arguing that genuine disputes of material fact existed and that he was improperly denied a trial. He further contends that the Bankruptcy Court erred in finding that all elements of 11 U.S.C. § 523(a)(2)(A) were satisfied, rendering his debt nondischargeable. Additionally, Brown argues that the court wrongly treated his breach of contract theory as a counterclaim rather than an affirmative defense, and improperly accepted the revived state court judgment amount of $125,000 as the basis for the nondischargeable debt. Finally, Brown disputes the court's rulings that post-judgment, pre-petition interest is nondischargeable and that the interest on the judgment was properly calculated using something other than simple annual interest.

---

[11] ECF No. 1.

**A. The Bankruptcy Court Properly Held the Debt Was Nondischargeable Under §**

**523(a)(2)(A)**

The Bankruptcy Court properly held that Brown's debt is nondischargeable. In the Settlement Agreement, Brown expressly admitted that he made materially false representations with the intent to defraud the Sethnas. Under 11 U.S.C. § 523(a)(2)(A), a debt is nondischargeable if it was incurred through "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." To prevail under this provision, a plaintiff must prove by a preponderance of the evidence that: (1) the debtor knowingly made false representations; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on those representations; and (4) the creditor suffered a loss as a proximate result. *See Grogan v. Garn*er, 498 U.S. 279, 291 (1991); *Field v. Mans*, 516 U.S. 59, 61 (1995).

There is no genuine dispute of material fact that Brown's debt was incurred through actual fraud. In the Settlement Agreement, Brown admitted that "he personally and through the actions of Oxford, did make materially false representations to Mr. Sethna and Ms. Sethna in connection with the Agreement of Sale and the building of the Property … with the intent to deceive and fraudulently obtain money and property." This admission alone satisfies each element of § 523(a)(2)(A): (1) knowingly false representations; (2) intent to deceive; (3) justifiable reliance; and (4) resulting loss.

Brown's conclusory assertions that he did not mean what he signed, or that the Sethnas also breached the agreement, are legally insufficient to create a genuine dispute of material fact. He offers no evidence contradicting the unambiguous language of his written admissions and does not dispute that he entered into the Settlement Agreement voluntarily and with the advice of counsel. Summary judgment was therefore appropriate. *See Celotex Corp. v. Catrett*, 477 U.S.

317, 324 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) ("[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment … the requirement is that there be no genuine issue of material fact.").

Brown's claim that the Bankruptcy Court improperly relied on collateral estoppel mischaracterizes the record. The Bankruptcy Court did not rely on preclusive effect from prior litigation; rather, it relied on Brown's own admissions in the Settlement Agreement.[12] His attempt to repudiate those admissions is unavailing. Once executed, settlement agreements are binding and enforceable contracts that courts will not disturb merely because a party later regrets the outcome. *See Ehrheart v. Verizon Wireless*, 609 F.3d 590, 593–94 (3d Cir. 2010).

The record confirms that Brown was represented by counsel during settlement negotiations, had ample opportunity to consult with his attorney, and chose to settle as a strategic decision. In his deposition, Brown acknowledged that counsel negotiated the terms on his behalf and that he opted to settle rather than face the uncertainties of trial.[13] He testified: "I think that this was the only option that I had. This was the only real option that I had where there was … some kind of definitive amount," explaining that the agreement allowed him the opportunity to reduce or avoid a judgment by completing repairs.[14] Given that the agreement was negotiated at arm's length, in good faith, and executed voluntarily, it is fully enforceable. Brown cannot now disavow its terms.

## B. The Bankruptcy Court Correctly Treated Brown's Breach of Contract Theory as a Time-Barred Counterclaim

---

[12] ECF No. 5-1 at 2.
[13] Brown Dep. 20:4-13, Dec. 6, 2022, ECF No. 26-1.
[14] *Id*. at 22:11-20.

The Bankruptcy Court properly rejected Brown's breach of contract theory as a time-barred counterclaim. Although Brown alleged that the Sethnas breached the Settlement Agreement by reviving the judgment, he raised this allegation not to defeat liability under § 523(a)(2)(A), but to offset or reduce the amount of the debt he owed. The Bankruptcy Court correctly concluded that this constitutes a counterclaim and not an affirmative defense, because it seeks affirmative relief rather than negating an element of the Sethnas' nondischargeability claim.

Under Pennsylvania law, an affirmative defense is "matter asserted by defendant which, assuming the complaint to be true, constitutes a defense to it," whereas a counterclaim is "a claim presented by a defendant in opposition to or deduction from the claim of the plaintiff." *Nat'l Union Fire Ins. Co. v. City Sav., F.S.B.*, 28 F.3d 376, 393–94 (3d Cir. 1994). Brown's theory does not undermine the Sethnas' showing of fraud or address the legal sufficiency of their claim under § 523(a)(2)(A); rather, it seeks to diminish the debt by asserting a breach by the Sethnas. As such, the Bankruptcy Court properly treated it as a counterclaim.[15]

As a counterclaim, Brown's breach of contract theory is time-barred. Under Pennsylvania law, actions based on a contract for the sale, construction, or furnishing of tangible property or fixtures must be commenced within four years. 42 Pa. C.S.A. § 5525(a). The Settlement Agreement was executed in 2008, and any alleged breach would have occurred shortly thereafter.

---

[15] Even if Brown's breach of contract theory were properly characterized as an affirmative defense, it is nonetheless without merit. Brown contends that the Sethnas themselves breached the Settlement Agreement by reviving the full judgment rather than allowing him additional time or credit for repairs. But under Pennsylvania law, an alleged breach by the non-moving party does not automatically excuse the moving party's own material breach or failure to perform. See *Widmer Engineering, Inc. v. Dufalla*, 837 A.2d 459, 468 (Pa. Super. Ct. 2003) ("[A] party who has materially breached a contract may not complain if the other party refuses to perform his obligations under the contract."). Here, it is undisputed that Brown failed to complete the agreed-upon repairs. Having materially breached his own obligations under the Settlement Agreement, Brown cannot now assert the Sethnas' purported breach as a defense to avoid the agreed-upon judgment.

Brown did not raise this claim until more than a decade later, well beyond the applicable limitations period. The Bankruptcy Court therefore properly dismissed the counterclaim as untimely.

### C. The Bankruptcy Court Properly Declined to Revisit the State Court Judgment Amount

The Bankruptcy Court properly declined to reduce the judgment amount from $125,000 to $120,000. The judgment, originally stipulated in the Settlement Agreement, was revived in 2009 by the state court at $125,000. Under the Rooker-Feldman doctrine, federal courts (including bankruptcy courts) are barred from reviewing or modifying final state court judgments. *See Baldino v. Wilson* (*In re Wilson*), 116 F.3d 87, 90 (3d Cir. 1997) ("The Rooker-Feldman doctrine prohibits lower federal courts from sitting as effective courts of appeal for state court judgments."). Any challenge to the validity or amount of the revived judgment should have been brought through the state appellate process. Brown failed to do so. The Bankruptcy Court correctly recognized that it lacked authority to alter the state court's judgment and appropriately treated the $125,000 figure as final and fixed.

### D. The Bankruptcy Court Correctly Included Post-Judgment, Pre-Petition Interest in the Nondischargeable Debt

The Bankruptcy Court correctly included post-judgment, pre-petition interest in the nondischargeable debt. Brown argues that even if the principal debt is nondischargeable under § 523(a)(2)(A), the interest accruing from the 2009 revival of the judgment to his 2021 bankruptcy filing should be excluded. That argument fails.

Once a debt is deemed nondischargeable under § 523, all components of the debt—including pre-petition interest—are likewise nondischargeable. Interest is not a separate obligation but an integral part of the continuing debt. As the Supreme Court recognized in *Bruning v. United*

*States*, 376 U.S. 358, 360 (1964), interest reflects the cost of the creditor's lost use of funds and is inseparable from the principal. Courts have consistently held that pre-petition interest carries the same nondischargeable status as the underlying debt. *See In re Larson*, 862 F.2d 112, 119 (7th Cir. 1988).

Here, Pennsylvania law provides for post-judgment interest at a simple annual rate of 6%. *See* 42 Pa. C.S.A. § 8101; 41 P.S. § 202. The Sethnas' 2009 judgment has lawfully accrued interest at this statutory rate. The Bankruptcy Court properly included that accrued interest in the total nondischargeable amount as of the petition date.

### E. Brown Waived Any Challenge to the Interest Calculation

The Bankruptcy Court did not err in accepting the total judgment amount, including interest, as claimed by the Sethnas. Brown's argument that the interest was improperly compounded rather than calculated using simple interest was raised for the first time on appeal and is therefore waived.[16]

Courts routinely decline to consider issues not presented to the bankruptcy court in the first instance, as doing so would undermine the efficiency and finality of bankruptcy proceedings. As the Eleventh Circuit has explained, permitting a party to withhold objections until appeal would enable litigants "to say nothing to the bankruptcy court, await its ruling, bypass that judgment, and for the first time take that objection to the district court." *Valdez v. Feltman* (*In re Worldwide Web Sys.*), 328 F.3d 1291, 1300 (11th Cir. 2003) (quoting *In re Daikin Miami Overseas, Inc.*, 868 F.2d 1201, 1208 (11th Cir. 1989)).

---

[16] Even if the Court were to reach the merits of the issue, Brown's argument lacks evidentiary support. A simple calculation shows that $125,000 accruing 6% simple interest per year for 15 years (since the judgment was revived in 2009) yields approximately $237,500. The $234,705 figure claimed by the Sethnas is consistent with that calculation, and Brown has provided no evidence beyond his speculation to suggest that compound interest was improperly applied.

Because Brown failed to raise any objection to the interest calculation in the Bankruptcy Court, that issue is not properly before this Court. Accordingly, there is no basis to disturb the Bankruptcy Court's acceptance of the Sethnas' claimed judgment amount.

## IV.    <u>CONCLUSION</u>

Therefore, upon review of the record in this matter, as well as the parties' briefs, the Bankruptcy Court did not err in determining that Brown's debt to the Sethnas is nondischargeable under § 523(a)(2)(A). The Bankruptcy Court also properly rejected Brown's breach of contract counterclaim, correctly declined to alter the revived judgment, and appropriately included interest in the total debt. The judgment of the Bankruptcy Court is affirmed.